**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 96-4154

WILLIAM P. HASKINS, a/k/a K.C.,
a/k/a Julio,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Bluefield.
David A. Faber, District Judge.
(CR-95-72)

Submitted: June 23, 1998

Decided: July 10, 1998

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, C. Cooper Fulton, Assistant Federal Public Defender, Charleston, West Virginia, for Appellant. Rebecca A. Betts, United States Attorney, John C. Parr, Assistant United States Attorney, Philip J. Combs, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Joseph Alvarez, Clint R. Lawson and William P. Haskins were charged with conspiracy and other drug offenses in the same multi-count, multi-defendant indictment. Alvarez was convicted in a bench trial of conspiring to distribute and to possess with intent to distribute crack cocaine, 21 U.S.C. § 846 (1994), and sentenced to 360 months imprisonment. Lawson entered a guilty plea to one count of distributing crack cocaine, 21 U.S.C. § 841(a) (1994), and was sentenced to a term of 84 months imprisonment. Haskins pled guilty to three counts of distributing crack and one count of aiding and abetting the distribution of crack and was sentenced to 420 months imprisonment. Alvarez appealed his conviction and sentence. Lawson and Haskins appealed their sentences. All three appeals were consolidated but Haskins later moved to strike the brief previously filed on his behalf by his appointed counsel and notified the court that he would proceed pro se. This court construed Haskins' motion to include a motion to relieve his counsel. By order, we relieved Haskins' counsel of his obligation of representation and permitted Haskins to proceed pro se. Consequently, we severed Haskins' case from those of Alvarez and Lawson for the purpose of the appeal.* Cf. United States v. Jackson, 863 F.2d 1168, 1170 n.1 (4th Cir. 1989). Although Haskins has been granted leave to file a pro se supplemental brief, he has not done so. We therefore address the issue previously raised by appointed counsel and affirm the sentence.

In late March or early April 1995 Alvarez met Jose Ortiz, a long-time friend, in the Bronx, New York. Ortiz told Alvarez he was selling crack in Beckley, West Virginia, and Alvarez decided to join him.

_____

*The consolidated appeals of Alvarez and Lawson have been decided. See United States v. Alvarez, No. 96-4070 (4th Cir. May 5, 1998) (unpublished).

Alvarez then traveled to West Virginia with conspirators William Haskins and Ira Mason. Ortiz remained in New York because his source was temporarily out of crack. Alvarez and Haskins began selling small amounts of locally-obtained crack while they waited for Ortiz to return with a larger supply of crack.

On April 23, 1995, Ortiz arrived in Beckley with 250 grams of crack and Alvarez was fronted 28 grams. Ortiz, Mason, and Haskins each took a portion of the crack, and Haskins hid the rest in his aunt's house, where he and Alvarez were living. On April 26, Ortiz and Haskins met with state and federal undercover agents at a motel and exchanged cash and crack for five firearms and a silencer. Ortiz and Haskins were immediately arrested. While in jail, Haskins called Alvarez and told him to sell the hidden crack. In September 1995, Alvarez was arrested while in possession of 4.51 grams of crack.

Before Haskins entered his guilty plea, he wrote the following note on two pieces of paper (the "Beat Case" letter), knocked at the window of the dayroom door in the area where Ortiz was confined, and pushed the papers under the door.

       Beat Case

InTrapment Lawsuit
(1) Deperation of Charactor
(2) Unlawful Arrest       I have <u>Incompadent</u>
(3) False Imprisonment     lawyer
I was Incohearent I didn't understand
I was lead to believe that I was going to do
life in prison if I didn't take the pleagreemt
(4) When Arrested they didn't let me make
a phone call to let family know what happened
I want all evidence they have
against me watch video never see cocain
I want a motion filed under the speedy
trial act to be released on bond
Tell lawyer it he doesn't want to help
you are going to get another one
 Say this in court & to lawyer

3

```
          In the room we never had any coke
          they could have got it from anywhere
          we were high at the time & we were
          just buying guns at a cheap price
          to sell for a higher one we were just
          agree with them to get the guns
          they asked us to buy the guns we didn't
          asked them over to JC & Marks house
          we asked them if they were cops and
          they said no
           And we win the case
            One love partner
          If Lawyer don't want to help you

            Call Lawyer Office & tell them
          you want another lawyer or

            Mary S. Feinberg Mag. 5:95-M-0029
```

Ortiz later received two letters from a friend of his named Crystal. The letters gave further advice and asked him not to testify against Haskins. Ortiz testified at Haskins' sentencing hearing that he knew the first letter came from Haskins and believed the later ones were written at his direction. Haskins argued that the "Beat Case" letter was merely notes he had made for himself on how to handle his own case and that the government had failed to prove he instigated the other letters.

Relying primarily on the "Beat Case" letter, the district court found that Haskins had obstructed justice by trying to influence the testimony and conduct of a codefendant. He received a 2-level adjustment. See USSG § 3C1.1, comment. (n.3). We have no difficulty in finding that the court's conclusion was not clearly erroneous. The "Beat Case" letter is quite evidently directed to another person, not to Haskins himself. Even if we assume that Haskins wrote it for his own use, he could have had only one purpose for passing it to Ortiz, and that was to influence Ortiz's conduct and potential testimony. We therefore affirm the sentence imposed by the district court.

AFFIRMED

4